MARTIAL LE BLANC *vs.* LOWELL, LAWRENCE, AND HAVER-
HILL STREET RAILWAY COMPANY.

HENRY BLANCHARD *vs.* SAME.

JOSEPH RAYMOND *vs.* SAME.

Essex.    March 3, 1898. — March 30, 1898.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Street Railway — Due Care — Law and Fact —
Assumption of Risk.*

In actions by three persons against a street railway corporation for personal
injuries, it appeared that the plaintiffs were riding in a wagon drawn by two
horses along the side of a highway upon which an electric railway ran ; that
one of the plaintiffs was driving and the others were sitting behind him, one on
each side of the wagon, and the horses were walking; and that a car came up
from behind and struck the wagon, causing the injuries complained of.   One of
the plaintiffs testified that he saw the car coming and thought there was room
enough for it to pass without striking the wagon; and another one of them tes-
tified that he did not see or hear the car until just as it was upon them.   There
was evidence tending to show that the car came at a high rate of speed without
sounding the gong.   *Held,* that the plaintiffs were entitled to go to the jury
upon the question of due care on their part; and that the doctrine of a volun-
tary assumption of the risk of collision did not apply.

THREE ACTIONS OF TORT, for personal injuries sustained by
the plaintiffs respectively, and for damage to a pair of horses
and a wagon owned by the plaintiff Le Blanc, by reason of a
collision with an electric car of the defendant.   The cases were
tried together in the Superior Court, before *Lilley,* J., who
allowed a bill of exceptions, in substance as follows.

The defendant is the owner of an electric street railway
between the cities of Lowell and Lawrence, and maintains a
pleasure resort on the line of the railway known as Glen Forest.
The plaintiff Blanchard ran the plaintiff Le Blanc's job wagon on
a share of what he, Blanchard, made, and the plaintiff Raymond
was in the employ of Blanchard.

On July 11, 1896, the plaintiffs had been to Lowell to deliver
a load of furniture and were returning to Lawrence.   At a point
about five miles from Lawrence the tracks of the defendant come
upon the highway from private land, and continue on the high-

way to Lawrence. The plaintiffs testified that between five o'clock and nine o'clock in the evening, at which latter hour they left Lowell, they each drank two glasses of beer, but the evidence was that they were sober. The plaintiffs Le Blanc and Blanchard testified that they lay down upon some bagging in the wagon and slept during a part of the journey. Shortly before they reached the place of the accident, Le Blanc and Blanchard rose from the floor of the wagon and were sitting on the sides of the wagon at the time of the accident and Raymond was driving the horses. The plaintiffs also admitted that they were perfectly familiar with the road, having driven over it often; and that, as they passed Glen Forest on the night in question, they heard and saw people at the grove, and knew that the cars of the defendant were likely to follow them. The night was still and bright but not moonlight, and within fifty feet of the place where the accident occurred a large electric arc light was burning.

The scene of the accident was on Lowell Street about fifty feet east of Margin Street, which crosses Lowell Street at right angles. The general direction of Lowell Street is east and west, and from Milton Street, which is three or four streets west of Margin Street and parallel therewith, there is a sharp descent on Lowell Street and for a short distance after a level stretch, and just west of Margin Street and at the place where the accident occurred there is another sharp descent on Lowell Street. Between Margin Street and the place where the accident occurred, there are, on the right hand side of Lowell Street, three or four shade trees, the branches of which overhang the street, the lowest branch being about eight feet above the street.

At the place of the accident the defendant maintains a double line of tracks in the middle of the street, and the distance from the nearest rail to the curbstone on the right hand side of Lowell Street at the place of the accident, looking towards the east, is ten feet. The outside width of the wagon was six feet six inches, and the defendant's car, which was an open one, projected beyond the rail about seventeen inches. At the time of the accident the plaintiffs were driving on the right hand side of the street and their horses were walking, when the defendant's car, which was proceeding in the direction in which the plaintiffs were travel-

ling, struck a corner of the wagon and threw the plaintiffs to the ground, causing the injuries complained of, and killed one of the horses and injured the other.

Evidence was introduced in behalf of the plaintiffs, but contradicted by the witnesses for the defendant, from which the jury would be justified in finding that the car of the defendant was being negligently run at a high rate of speed.

The plaintiffs and some of the plaintiffs' witnesses, who were passengers on the car, testified that they did not hear the noise of the car, nor any signals of warning from the gong on the car.

The motorman and conductor testified that, from the time the car turned from Milton Street on to Lowell Street, the gong was sounded at intervals at the street crossings, and they and another witness for the defendant, who was a passenger, testified that from a point three hundred feet from the place of the accident the gong was sounded continuously; and that the motorman shouted a warning to the occupants of the wagon.

The plaintiff Raymond, who was driving, admitted that he was sleepy and drowsy, and the plaintiff Le Blanc, who was sitting on the side of the wagon behind Raymond, and who testified that Raymond was under his direction and control, testified, on cross-examination, that he did not hear the car coming until he saw it when it was about one hundred yards away; that he looked at the wagon and thought it was clear of the track; that, thinking there was plenty of room for the car to go by without striking the wagon, he said nothing to the driver; and that he did not hear the motorman shout.

The plaintiff Blanchard, who was sitting on the other side of the wagon and behind Raymond, testified, on cross-examination, that he was looking toward the way the horses were going, and did not see the car until just as it was upon them; that he did not hear any noise; that he should say when he saw the car it was " about a yard or an acre away or so "; that it was " probably as far as from here to Essex Street" (which is about one hundred and twenty-five feet); that he thought the driver had time enough to get out of the way; that he knew he was in the way, and told him to get out of the way; and that he heard Le Blanc tell him so, and he attempted to pull out of the way, but he did not "get out of the way when he was struck."

The accident occurred at about eleven o'clock at night, the street was unpaved except between the tracks, and there was testimony that the singing of the trolley wires could be heard for a distance of six hundred feet. There was evidence that the arc light emitted a sound that would, to some extent, counteract the noise of the trolley wire. There were no other vehicles or obstructions of any kind in the street at the place of the accident, nor was there anything which obliged the plaintiffs to drive upon the tracks of the street railway.

The evidence tended to show, and the motorman admitted, that he made no attempt to stop his car except when the car was about to strike the wagon; and that his intention was to run right by the wagon without stopping his car, but the car was stopped within sixty feet of the place where the accident occurred.

Upon these facts, the defendant asked the judge to rule that there was not sufficient evidence of due care upon the part of the plaintiffs, and that the plaintiffs assumed the risk of the injuries which they sustained; but the judge refused so to rule.

The jury returned a verdict for each of the plaintiffs; and the defendant alleged exceptions.

*J. P. Sweeney*, for the defendant.

*J. P. S. Mahoney*, for the plaintiffs.

ALLEN, J. The plaintiffs' horses were on a walk, on the side of the road, when the defendant's car came up from behind and struck the wagon, and thus caused the injuries complained of. It is not denied that there was evidence for the jury of negligence on the part of the defendant; but the defence rests on the grounds that the plaintiffs also were careless, and that they assumed the risk of accident. One of the plaintiffs testified that he saw the car coming, and thought there was room enough for it to pass without striking the wagon. Another one of them testified that he did not see or hear the car till just as it was upon them. His testimony is not very clear, perhaps because of lack of familiarity with the English language. The testimony of the third plaintiff, who was driving, as to the circumstances of the accident, is not given. There was evidence tending to show that the car came at a high rate of speed, without sounding the gong. The plaintiffs were entitled to go to the jury upon the question

of their own due care; and the doctrine of a voluntary assumption of the risk is hardly applicable to the case. If they were in the exercise of due care, they were not consciously taking a risk of collision. The requests for instructions were therefore rightly refused. *Exceptions overruled.*