JAMES J. SULLIVAN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

JOHN J. KNOX *vs.* SAME.

Suffolk.    March 7, 1904. — May 19, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* In driving, Contributory.    *Damages,* Remoteness.

One driving a heavy brewery team along the right side of a street, the centre of which is occupied by the structure supporting an elevated railway with the tracks of a street railway on the surface below, if there is a team ahead of him headed in the same direction drawn up against the curbstone opposite one of the posts of the elevated structure and he has not room to pass between the team and the post without turning upon the track at his left, is bound before driving upon the track to look back to see whether he has an opportunity to do so without being struck by an approaching car; but, if he looks and seeing no car drives upon the track, it is not his duty to turn off the track until he has passed the post and has become aware of the approach of a car from behind. If in such a case the brewery wagon is struck from behind by a car, it is a question of fact whether the driver turned upon the track when the car was so near to him that a collision could not be avoided by due care on the part of the motor-man, or whether having an opportunity to turn upon the track he did so and was run down by the negligence of the railway company.

One sitting on the seat of a brewery wagon beside the driver, not interfering at all with the driving but trusting himself entirely to the driver, if thrown out and injured through the negligence of a street railway company, can recover against the company if the driver was in the exercise of due care.

If the driver of a brewery wagon is thrown from his seat to the street, a distance of eight or nine feet, through the negligence of a street railway company in running one of its cars into his wagon from behind, and testifies that before the accident his health was good, and an expert testifies that such a fall could be an adequate cause of appendicitis, this will warrant a finding that inflammation of the appendix following the accident was caused by the collision.

TWO ACTIONS OF TORT for personal injuries from being thrown from the seat of a brewery wagon, in which the plaintiff in the first case was driving and the plaintiff in the second case was sitting by his side, by a collision, on Main Street in that part of Boston called Charlestown, caused by a car of the defendant running into the wagon from behind, through the alleged negligence of the defendant's servants. Writs dated January 17 and 24, 1901.

In the Superior Court the cases were tried together before

*Bell*, J. At the close of the evidence the defendant, among other requests, asked the judge to rule as follows:

" 1. Upon all the evidence in the case the plaintiffs are not entitled to recover."

" 4. There is no evidence in the case to warrant the jury in finding that the plaintiffs, or either of them, were in the exercise of due and proper care or took any precaution to avoid the accident and therefore neither of the plaintiffs is entitled to recover."

" 6. There is not sufficient evidence of any negligence on the part of the motorman to warrant a verdict for the plaintiffs or either of them."

" 10. If the jury find that the plaintiff Sullivan is entitled to recover damages the jury are instructed that there is no sufficient evidence that the appendicitis from which the plaintiff suffered at a time subsequent to the accident was a result of the accident or that the accident in any way contributed to the existence of that disease or in any way affected it.

" 11. If the jury find that the plaintiff Sullivan is entitled to recover they are instructed to disregard, in the assessment of damages, all the evidence introduced in the case in regard to appendicitis or the operation for appendicitis."

The judge refused to give the rulings requested, and submitted the cases to the jury, submitting to them the special question: " Were the attacks of appendicitis from which the plaintiff Sullivan suffered caused by the accident." The jury answered " Yes."

The jury found for the plaintiff Sullivan in the sum of $4,000, of which that plaintiff agreed to remit $1,000, and for the plaintiff Knox in the sum of $2,250. The defendant alleged exceptions.

*P. M. Keating*, (*J. H. Hurley* with him,) for the plaintiffs, was stopped by the court.

*W. B. Farr*, for the defendant.

LORING, J. At the argument the defendant waived the contention made by it in its brief that the evidence did not warrant a finding that it was guilty of negligence, and insisted only that there was no evidence of due care on the part of the plaintiffs and that the presiding judge should not have let the jury find that Sullivan's attack of appendicitis was caused by the collision.

The accident happened under these circumstances. Sullivan was driving a large brewery wagon half filled with empty beer barrels, on the right side of Main Street in Charlestown going toward Boston. The centre of the street was covered overhead by the elevated structure of the defendant, and on the surface by its tracks. The rows of iron posts supporting the elevated structure were thirteen feet from the curbstone, and the westerly rail of the westerly track was three feet east of the posts. The brewery wagon in question had wings or outriggers over the wheels, and at the wings was seven feet wide. A "team" which was ahead of the brewery wagon and headed in the same direction was drawn up against the curbstone, and between the curbstone and one of the posts of the elevated structure, as we understand the bill of exceptions. The space between this "team" and the post of the elevated structure not being sufficient to allow him to drive the brewery wagon between them, Sullivan "turned his team to the left and upon the track in order to pass by the post." When his horses' heads got to and beyond the post in question, one of the defendant's cars going from Charlestown to Boston ran into the wagon from behind, forced it against the post in question, threw one of the horses down, and knocked both plaintiffs from the seat of the wagon to the ground, a height of eight or nine feet.

Sullivan testified that "Just as I was swinging out I looked behind me, and I didn't see anything behind me, so I went right along and the first thing I knew I was going toward this post." He further testified that "From the time he swung into the track until the car struck his wagon the horses went about forty feet and were walking right along, straight ahead, the way the track runs." The nigh wheels were between the rails of the right hand track and the off wheels about a foot and a half outside the right rail of that track. On cross-examination he testified that he turned on to the track about thirty feet from the post, and that when the car struck his team his forward wheel was about five feet from the post. It was admitted that from the noses of his horses to the tailboard of his wagon was thirty feet.

There was evidence that the gong was not sounded. It did not appear from the plaintiffs' witnesses how far off the car was

when Sullivan turned the wagon in front of it.   One of their witnesses testified that when he "first saw the brewery wagon it was coming right down the track, and the car was back about . . . fifty feet or so "; and that " he did not see the team until it was on the track, and did not know where it came from."   Another witness testified that he " saw the brewery wagon on the track in front of the car going straight ahead, and the car struck it and knocked it to one side.   When he saw the wagon the car was twenty-five or thirty feet from it."   The defendant's motorman, on the contrary, testified that the wagon was turned on to the track when ten or fifteen feet behind the post, and not over twenty to thirty feet ahead of the car; that he immediately sounded the gong, set the brakes, and, finding that they would not stop the car in time to avoid a collision, released them and reversed the car; and that when the car struck the wagon it (the wagon) had not finished turning in, but was " in a slanting position with reference to the rails."

The defendant's argument is that if Sullivan had looked as he said he did he would have seen the car.   The plaintiffs' argument is that the car was so far behind the wagon when Sullivan drove on to the tracks that it was not then in sight.   When it is said that it was not then in sight it is not meant that it could not have been seen by a person facing north in place of south, the direction in which Sullivan was driving, but that it was not in the sight of a person driving south who looks over his shoulder to ascertain whether he has an opportunity to drive upon the track, so far as a car coming up behind him is concerned.   So far as a car coming up behind him was concerned, Sullivan was bound to look and see that he had an opportunity to get upon the track.   When on the track he had a right to drive by the post, and it was not his duty to turn off the track until he was by the post and became aware of the approach of the car from behind.   See in this connection *Vincent* v. *Norton & Taunton Street Railway*, 180 Mass. 104; *Le Blanc* v. *Lowell, Lawrence & Haverhill Street Railway*, 170 Mass. 564.   See also *Robbins* v. *Springfield Street Railway*, 165 Mass. 30.

It was for the jury to decide whether Sullivan turned in upon the track when the car was so near to him that a collision could not be avoided by the exercise of due care on the part of the

defendant, or whether he had an opportunity to turn in, succeeded in turning in, and then was run down through the negligence of the defendant.

We are therefore of opinion that there was evidence of due care on the part of Sullivan, and that the presiding judge was right in submitting the case to the jury.

We are also of opinion that he was right in letting the jury find a verdict in favor of Knox. Knox testified that "he did not interfere at all with the driving, but trusted himself entirely to Sullivan."

It was laid down in *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77, 79, that "if the plaintiff failed to use the care which prudence required, relying upon the vigilance of his companion, he must prove that Haskell was in the exercise of due care, not only in the management of his horse, but in using the necessary precautions to guard against danger from passing trains." Under this rule, the plaintiff Knox had a right to go to the jury on the question whether Sullivan exercised due care. See also in this connection *Randolph* v. *O'Riordon*, 155 Mass. 331 ; *Murray* v. *Boston Ice Co.* 180 Mass. 165.

Dr. Bottomley's testimony warranted the jury in finding that the inflammation of the appendix was caused by the collision. He properly was found qualified to testify as an expert, and testified "that such a fall as Sullivan testified to receiving could be an adequate cause of the appendicitis." That was sufficient, taken in connection with the plaintiff's testimony that his health was good before the accident. See in this connection *McGarrahan* v. *New York, New Haven, & Hartford Railroad*, 171 Mass. 211 ; *Houston* v. *Traphagen*, 18 Vroom, 23.

*Exceptions overruled.*