RICHARD P. CARRAHAR *vs.* BOSTON AND NORTHERN STREET
RAILWAY COMPANY.

Essex.   March 3, 1908. — May 20, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence.   Street Railway.*

When a motorman operating an electric car sees a team ahead of him going in the
same general direction, which is being driven toward the tracks so that if
both the team and the car keep on a collision will ensue, it is the duty of the
motorman to stop his car if he sees that the driver of the team is going to keep
on, even if the driver ought not to keep on, and if the motorman does not stop
the car and deliberately runs into the team, his act is negligence on the part of
the railway company by which he is employed.

If the driver of a horse attached to a heavily loaded express wagon, with a canvas
drawn up over the hood above his seat and a pelting rain coming full in his face,
after stopping at a fountain to let his horse drink, and looking and seeing no car
in sight upon tracks where he knows that cars pass at frequent·intervals, drives
at a slow walk a distance of from a hundred and twenty to a hundred and forty
feet and then without looking again drives diagonally upon the tracks and is
run into from behind by a car coming from a direction where the motorman could
have seen him for thirteen hundred feet, it being obvious from the time he left
the drinking fountain that he intended to cross the tracks, he is not necessarily
negligent as matter of law, and in an action against the corporation operating the
car for his injuries caused by the collision, the question whether he was in the
exercise of due care is for the jury.

In an action by the·driver of an express wagon against a corporation operating a
street railway, for injuries from a car of the defendant running into the plain-
tiff's wagon from behind, when the plaintiff had been walking his horse slowly
for some distance after looking to see whether a car was approaching and then had
started to cross the tracks diagonally without looking again, where there is clear
evidence that the motorman of the defendant was negligent and the principal
question, on which the rights of the parties depend, is whether the accident was
caused solely by the defendant's negligence or was caused in whole or in part
by the contributory negligence of the plaintiff, it is error to give an instruc-
tion to the jury which they may understand to mean that the rights of the parties
depend on which got to the place of collision first, because it might be that the
plaintiff, if he had exercised due care, would have heard the defendant's gong
before he did hear it and would not have gone upon the track at all, or, if he
had got on the track, would have driven off it in time to avoid a collision, so that
the fact that he was the first to get to the place on the tracks where he was
struck is not decisive in his favor.

TORT for personal injuries received in the manner stated in
the opinion.   Writ dated September 17, 1903.

At the trial in the Superior Court before *White*, J., the jury

returned a verdict for the plaintiff in the sum of $1,800 ; and the defendant alleged exceptions.   The following is a reduced copy of the plan referred to in the opinion.

The case was submitted on briefs.

*S. Parsons & H. A. Bowen*, for the defendant.

*W. H. Southwick*, for the plaintiff.

LORING, J.   The story told by the plaintiff in this case is that on the afternoon of July 21, 1903, he was driving a one horse express wagon heavily loaded through South Common Street in Lynn, shown on the plan, on his way from Boston to Nahant.   The afternoon was a stormy one, with a pelting, driving, easterly rain full in his face.   He had a canvas over his wagon, drawn up over a hood or shade above his seat.   When he came to the end of the Common he looked to see whether there was a car coming.   He saw none, and drove to the drinking fountain to give his horse a drink.   He then testified: " I looked around again and I could see down below the trees ; there is trees at the end of the Common, probably two or three hundred feet away from where I was.   I should say two hundred feet anyway, and then I proceeded on.   I didn't see any car, so I started across in a direct line right across Market Street and about one hundred feet, one hundred forty feet from the drinking fountain I struck the car track and I goes in the car track for about fifteen feet, ten or fifteen feet, and when I was in there at that distance I heard the car coming from behind, so I tried to get the horse to go faster ; I was going very slow."   He tried to get out of the

way, but before he succeeded in doing so the car " struck the hind wheel and threw the hind part of the wagon out and directly after that struck the forward wheel and threw that out, and about the same time it struck the horse and threw the horse down and it threw me in the back of the wagon."

It is admitted that " the plaintiff walked his horse from the drinking fountain till he got upon the car track and did not look back or listen after he left the drinking fountain."

Evidence was introduced by the defendant tending to show that the plaintiff was asleep ; that the gong was sounded and he paid no attention to it, and that the car struck " in between the horse and the shaft near the hind part of the horse " ; and that the plaintiff was not thrown off his seat.   Some of the evidence introduced by the defendant corroborated that of the plaintiff as to the way he drove on to the car track, while other witnesses testified that the plaintiff " was driving a little ways parallel with the track and then swung across when the car was within twelve feet of him."

The motorman of the car in question testified that " at City Hall Square there was a covered team going in the same direction on an angle towards the track.   When I first noticed the team I was about thirty yards in the rear.   I immediately set my brake and rang my gong.   My car was running at about four or five miles an hour just prior to this time.   This team kept coming in towards the track and when I was about ten feet from him I shouted and rang my gong harder, but he kept coming in toward the track and the front left hand corner hit his right shaft."

It was also admitted that the plaintiff was thoroughly familiar with the locus and that there were four lines of electric cars running through City Hall Square, and thirty-six cars an hour went through the square at that time of day, " averaging less than two minutes apart."

A civil engineer called by the defendant testified that a motorman in the front end of an electric car coming from Boston as the car in question was coming would have a clear view of the scene of the accident for something like thirteen hundred feet, probably more.

The defendant asked for rulings that as matter of law the

plaintiff was negligent and the defendant was not. These were refused and exceptions were taken.

In the course of his charge the presiding judge told the jury that: " Ordinarily, where two men are driving vehicles upon the street, the one who, pursuing his course and not increasing his rate of speed or changing his direction, would naturally reach an intersecting point first, would naturally have the right of way, and the one who, not changing his rate of speed or his direction, would naturally reach such point last must give way to the rights of the one who would reach there first." To this an exception was taken.

1. The testimony of the motorman made out a complete case of negligence on his part, that is to say, on the part of the defendant.

When the motorman of a car sees a team ahead which is being driven in a straight line " coming in towards " the tracks so that if both keep on a collision will ensue, it is the duty of the motorman to stop his car if he sees that the driver of the team is going on, even if the driver ought not to go on. In place of that the motorman in the case at bar by his own testimony deliberately ran the plaintiff down. We are of opinion that no exception lies to the ruling by which the presiding judge left this question to the jury. *Glazebrook* v. *West End Street Railway*, 160 Mass. 239. *White* v. *Worcester Consolidated Street Railway*, 167 Mass. 43. *Vincent* v. *Norton & Taunton Street Railway*, 180 Mass. 104.

2. The question whether as matter of law the plaintiff was guilty of contributory negligence is a close question. But on the whole we think that this also was a question for the jury.

In such a case as that now before us the law is settled. The difficulty lies in drawing the line between what is and what is not negligence as matter of law in particular cases.

The plaintiff was bound to exercise due care in looking to see whether he could safely cross the track in question. See for example *Jeddrey* v. *Boston & Northern Street Railway, ante,* 232 ; *Stubbs* v. *Boston & Northern Street Railway,* 193 Mass. 513. See also *Sullivan* v. *Boston Elevated Railway,* 185 Mass. 602, 605.

The plaintiff admitted that he drove at a slow walk for one hundred and forty feet after looking before he entered on the

tracks. If he personally was at the fountain when he looked, his horse's nose must have been some ten feet or so nearer the rail, and when he testified that he looked when at the drinking fountain it does not necessarily mean that he was exactly opposite the centre of it. This testimony might fairly be taken to mean that he looked as he started to drive away from the fountain. The length of the plaintiff's horse and wagon is not given in the bill of exceptions. It may fairly be assumed to be about twenty feet. The result is that the jury were warranted in finding that he drove about one hundred and twenty to one hundred and forty feet after looking, before his horse's nose crossed the nearer rail of the track in question. On paper that sounds like a long distance. But to drive about six lengths of his team cannot (in our opinion) be said as matter of law to be too long a distance to drive without looking, under the circumstances of this case. In this case the course which the plaintiff took when he left the drinking fountain and which he adhered to throughout, showed that he intended to cross the tracks. When this is taken in connection with the fact that the motorman could see the point where the collision took place for "something like thirteen hundred feet, probably more," we think that the question of the negligence of the plaintiff was for the jury, as in *Jeddrey* v. *Boston & Northern Street Railway, ante,* 232; *Stubbs* v. *Boston & Northern Street Railway,* 193 Mass. 513; *Sullivan* v. *Boston Elevated Railway,* 185 Mass. 602.

The case does not come within *Seele* v. *Boston & Northern Street Railway,* 187 Mass. 248. There, after driving three quarters of a mile parallel and close to the defendant's tracks the plaintiff pulled sharp across them without looking to see if a car was close behind him.

It should be noticed that the thirty-six cars an hour which went through City Hall Square all did not come on the tracks here in question.

3. We are of opinion, however, that the exception to the charge must be sustained.

If the word "ought" were substituted for the word "must" in the last line, the proposition stated would be correct as an abstract proposition of law.

But even then it would not have been proper to instruct the

jury that the rights of the parties in the case then before the court depended upon that proposition.

From what has been said the question on which the rights of these parties depended was whether the accident was caused solely by the negligence of the defendant, that is to say, was caused by the negligence of the defendant if it was negligent, and was not caused in whole or in part by the contributory negligence of the plaintiff if he was negligent. It might well be that the plaintiff, if he had exercised due care, would have heard the defendant's gong before he did hear it and would not have gone on the track at all, or, if he had got on to it, that he would have driven off it in time to avoid a collision. The fact that the plaintiff was the first to get to the place on the tracks where he was struck was not decisive of the rights of the parties in the case at bar. The jury might well have understood the judge to tell them that it was.

*Exceptions sustained.*