EDWIN A. FERGUSON *vs.* OLD COLONY STREET RAILWAY
COMPANY.

Norfolk.    November 16, 17, 1909. — January 8, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Street railway.    *Practice, Civil,* Order for judgment.    *Supreme Judicial Court.*

A man sixty-two years of age, with good eyesight and hearing, cannot be said to be taking sufficient care for his own safety if, when driving in a grocery wagon for one hundred and fourteen feet on a private driveway from a yard toward a dangerous crossing of street railway tracks, his view of the tracks toward one side being so obstructed by trees and shrubbery that it is impossible for him to see a car approaching from that side at a greater distance than twenty or thirty feet away until he is upon the tracks, he does not listen for an approaching car, and, although he knows that cars pass that point every half hour, does not know how soon one is likely to come because he does not look at his watch, and looks in the direction from which the car is coming only twice, once when through the foliage from a point less than thirty feet from the track he gets a mere instantaneous glimpse of about thirty feet of the track, and the second time when his horse's feet are on the second rail of the track and he is from four to six feet from the nearest rail, when he sees a car ninety to one hundred feet from him which is approaching very rapidly, and which, although he starts his horse up, strikes his wagon and injures him.

Although it is true that there is no absolute rule of law requiring a traveller to look and listen before crossing the track of an electric street railway, the circumstances may be such that a failure to look or listen properly will show negligence.

In this case, where the trial judge at the close of the evidence was requested to rule that upon all the evidence the plaintiff could not recover and such request was refused, and, there having been a verdict for the plaintiff, the defendant alleged exceptions and the plaintiff alleged none, this court, in sustaining the defendant's exceptions, was of opinion that the case had been fully tried and that the plaintiff was not entitled to maintain his action, and therefore in accordance with St. 1909, c. 236, directed the entry in the trial court of judgment for the defendant.

TORT for personal injuries received by the plaintiff as he was driving in a grocery wagon out from the yard of one Clinton in East Braintree to and upon the tracks of the defendant on Quincy Avenue under the circumstances stated in the opinion. Writ dated November 10, 1906.

The case was tried before *Crosby*, J. The material facts are stated in the opinion. At the close of the evidence the defendant, among other requests, asked for a ruling that upon all the evidence the plaintiff could not recover. The presiding judge refused to rule as requested, there was a verdict for the plaintiff; and the defendant alleged exceptions.

*Asa P. French*, (*J. S. Allen, Jr.*, with him,) for the defendant.

*F. N. Nay*, for the plaintiff.

SHELDON, J. It is sufficiently manifest upon reading this bill of exceptions and looking at the photographs which are referred to therein that this accident occurred at a very dangerous crossing. The place was perfectly familiar to the plaintiff; he had driven his horse over the defendant's tracks into and out of Clinton's yard a great number of times, and was well aware of the danger that existed. It was his duty in coming out to and upon the defendant's tracks on this occasion, to use his senses actively for his own protection. The due care which one is bound to exercise varies with the existing circumstances of each particular case. *Cayzer* v. *Taylor*, 10 Gray, 274. *Cunningham* v. *Hall*, 4 Allen, 268. *Gardner* v. *Boston Elevated Railway*, ante, 213. The circumstances here called for a high degree of care.

The plaintiff was sixty-two years of age, but his eyesight and hearing were good. The point at which he started to come out from the yard of the Clinton house was distant one hundred and fourteen feet from the street. The defendant's track was distant sixteen and four tenths feet from the street

line. The car that struck the plaintiff came from his right, that is, from Weymouth. On direct examination he testified that as he drove out he looked to his right and heard and saw nothing of a car; that the foliage was quite heavy and obstructed his view, but that after he got by the fence which separated the yard from the street and when his horse was on the tracks, he looked again and saw the car from ninety to a hundred and ten feet away and coming toward him very rapidly; that he started his horse up, but the car hit him and caused the injuries complained of. His testimony on cross-examination was rather in addition to than in modification or variation of these statements. He knew, he said, that cars passed this place every half hour, but he did not know how soon one was likely to come because he did not look at his watch. He testified that at the place where he first looked along the track he could see "quite a distance" towards Quincy, and a portion of the track towards Weymouth; that when he first looked to the right he could see out under the trees perhaps thirty feet of the track; that this was a mere instantaneous glimpse, looking through the foliage, and that, sitting in his wagon, he was then ten or twelve feet inside the fence line, — that is, less than thirty feet from the track which he was approaching. When he looked to the right the second time, his horse's feet were on the second rail of the track and he himself was from four to six feet from the nearest rail. He then saw the car coming toward him, and not until then did he have any idea that a car was in the neighborhood. He testified to no other precaution as to a car coming from his right than that he looked twice in that direction, once for an instantaneous glimpse through the foliage, when he was within thirty feet of the track, and again when his horse was already on the track just before the car struck him. In answer to the question why he did not look a second time before he got upon the track he said, "I could not tell you, I am sure." His further cross-examination on this point is instructive: "Q. You knew that was a bad place, didn't you, a dangerous place? A. I never thought anything about it particularly. — Q. What do you think now? A. I think it is a dangerous place. — Q. You then knew the situation as well as you do now, except that you had not

had this experience? A. It had not been called to my attention, and it has since very strongly. — Q. You knew as you came out of that yard your sense of sight could not help you any? A. I never thought anything about it. It never occurred to me in that way. — Q. It is true, is it not, your sense of sight could not help you any coming out of that yard? A. It might be. — Q. And didn't you realize that at the time? A. No. — Q. Why not? A. I do not know. . . . — Q. And you knew cars were hidden from anybody coming out of that driveway until they got almost on to the track, did you not, coming from the direction of Weymouth? A. I do not know as I ever gave it a thought if I knew it. — Q. You were coming along just as if it were not a dangerous place, were you not? A. I might have been. — Q. Were you not? A. I presume so. — Q. Doing just as you would have done if it had not been a dangerous place, were you not? A. Quite likely. — Q. No more and no less, that is true, is it not? A. I guess so."

On direct examination he did not say that he listened for a car while approaching the street, but did say that he heard no noise of any approaching car. On cross-examination he testified that he made no special effort, on account of the noise his own team was making, to hear other noises. Further cross-examination was as follows: " Q. Now, you did realize of course that tracks of a street railway company are to be gone over with some care and precaution to avoid accidents, did you? A. I did. — Q. You realized that? A. Yes. — Q. You realized or didn't you realize that you were going from a place of safety in that yard out in to a place of danger? A. Not at that time I did not realize; I realized it afterwards. — Q. Why did you not realize it at the time? A. Because I suppose I should have heard the car, the ringing of bells, or the gong, or something of that kind. In fact I gave it no thought. — Q. Now, did you listen for anything of the kind? A. No, I do not think I did. — Q. Will you say, sir, that the gong of that car was not ringing? A. I will. — Q. But you did not listen particularly to hear whether it was or not? A. Not particularly; no, sir. — Q. Do you remember what you were thinking about? A. No, I do not remember. I was thinking about getting back to my place of business. — Q. If the gong of that car was ringing can

you give any reason why you did not hear it? A. I do not know of any reason why I should not hear it. — Q. Did you see the car before you heard it? A. Yes. . . . — Q. Can you think of any reason why you did not hear those sounds before you saw the car if you were listening? A. No, I cannot think of any without the noise of the teams on the street might have — Q. Can you think of any other reason? A. No. — Q. Did you think of that at the time? A. No, I did not. — Q. Did it occur to you that in such a place as that under the circumstances and the noise that was made by your wagon, the noise of this other coal team on the street, the little that you could see, the frequency with which cars came along there, that it would have been safer to stop and listen for a car; did it occur to you? — A. It did not occur to me. — Q. Do you think now that it would have? A. I think now that it might have been. — Q. You did have the same knowledge on that morning of your situation that you have now, did you not? A. I cannot say that I did before it occurred. — Q. You had the same opportunity of observing the dangers there before this accident that you have had since? A. Probably, yes. — Q. But you had not observed them before, is that right? A. Yes, sir."

The bill of exceptions further states that it was the plaintiff's "recollection and belief that it was impossible for anybody driving out of that yard on to the track to have seen a car at a greater distance than twenty or thirty feet away, until the horse was on the track. He knew that it was slightly down grade from the direction of Weymouth for some distance, and that cars were in the habit of coasting down there; that there are not many houses about there; that there was a straight track for a long distance on either side of that driveway."

We find no other testimony in the exceptions that tends to vary or to explain these statements of the plaintiff.

On this evidence we cannot avoid the conclusion that the plaintiff failed to take any sufficient care for his own safety. This affirmatively appears from his own testimony. Approaching what he knew to be a dangerous crossing, he did not listen for a car; he did not look for one coming from the right except in a manner which he knew to be wholly inefficacious. It is true of course that there is no absolute rule of law requiring a

traveller to look and listen before crossing the track of an electric street railway. *Robbins* v. *Springfield Street Railway*, 165 Mass. 30. *Hennessey* v. *Taylor*, 189 Mass. 583. But it is also true that the failure to take such a precaution is not evidence of the exercise of due care; and the circumstances may be such that a failure to look or listen properly will show negligence. *Donovan* v. *Lynn & Boston Railroad*, 185 Mass. 583. This plaintiff gave no thought to the danger to which he was exposing himself. He drove out of the yard and upon the street just as he would have driven if no such danger had confronted him. This case is governed in principle by *Saltman* v. *Boston Elevated Railway*, 187 Mass. 243; *Fitzgerald* v. *Boston Elevated Railway*, 194 Mass. 242; *Kelly* v. *Boston Elevated Railway*, 197 Mass. 420; *Tognazzi* v. *Milford & Uxbridge Street Railway*, 201 Mass. 7; *Willis* v. *Boston & Northern Street Railway*, 202 Mass. 463; *Smith* v. *Boston Elevated Railway*, 202 Mass. 489. Accordingly we need not consider any of the other questions raised in the case.

The cases cited by counsel for the plaintiff do not help him. In most of them there was evidence either that the person injured looked or listened for a car when that might avail him, or that he was run into from behind when he might reasonably have expected the motorman to avoid doing so. *Robbins* v. *Dartmouth & Westport Street Railway*, 203 Mass. 546, decided since this case was argued, turned on the fact that a traveller in the street could not be held to anticipate that a car would be run at the rate of forty miles an hour in a busy city street.

The case has been fully tried, and it is manifest that the plaintiff is not entitled to maintain his action. The first instruction requested by the defendant should have been given. Under the provisions of St. 1909, c. 236, not only must the exceptions be sustained, but the defendant is entitled to have judgment entered in its favor; and it is

*So ordered.*