DANIEL J. KANE, administrator, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 19, 1913. — May 25, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* In use of highway, Street railway, Causing death. *Evidence,* Weight. *Witness,* Contradictory statements.

If a traveller on foot starting to cross a city street thirty-five feet wide from curb to curb, on which are parallel street railway tracks, looks when he is five or six feet from the curb and sees a street railway car approaching, which is about one hundred and seventy-five feet away and which is running at very excessive speed, although the traveller does not appreciate this, and if, after going about fifteen feet farther, when he has seven feet more to go to get to a place of safety, he looks again and sees the car from thirty-five to ninety feet away and keeps on, not realizing until he gets between the third and fourth rail the excessive speed at which the car is moving, and then, realizing it, darts forward and is struck by the car and killed when he is on the farther rail and within two feet of a place of safety, in an action for causing his death these facts are affirmative evidence of his due care under the requirement of St. 1907, c. 392.

Where the only eyewitness of an accident resulting in death, on his direct, on his cross and on his redirect examination, makes contradictory statements in attempting to describe the circumstances attending the accident, it is for the jury to weigh his conflicting testimony and decide what the facts were. Following *Tierney* v. *Boston Elevated Railway,* 216 Mass. 283.

LORING, J.    The only question presented by this bill of exceptions is whether there was evidence of due care on the part of the plaintiff's intestate within St. 1907, c. 392 (as to the meaning of which see *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467). There was evidence that the defendant's motorman was drunk and that the car which killed the intestate came faster than the eyewitness to the accident ever had seen an electric car go before.

The intestate was run over and killed on the farther rail of the inbound track as he was crossing from the west to the east side of Washington Street, in Boston, on the northerly cross walk of Deca-

tur Street as shown on the plan. The accident happened about half past ten o'clock in the evening of an August day.

The eyewitness testified that he saw the intestate look each way as he left the sidewalk to cross Washington Street; that he was then "three or four feet from the curb, or half way between the curb and the nearest rail." That the car was then one hundred and fifty

to one hundred and seventy-five feet away. That he looked again toward Dover Street after he crossed the first track, that is to say, the outbound track, and that when he looked the second time the car was "above" Waterford Street. It is agreed that it was thirty-five feet from the cross walk here in question to the middle of Waterford Street. On cross-examination the witness testified that the intestate looked but once just after he left the sidewalk. He also testified on cross-examination that when the intestate looked the first time the car was one hundred and fifty feet away. It is agreed that it was one hundred and forty-five feet from the cross walk here in question to the middle of Garland Street. The witness further testified that he did not realize that the intestate could not get across in safety until he was crossing the outbound tracks, and that at that time the car was "lots nearer" than it was when the intestate looked just after leaving the sidewalk, but he could not say how far off it was when the intestate was crossing the outbound tracks. On redirect examination the witness was asked

where the car was when the intestate started to cross the track "nearest to the side of Washington Street on which you were," and he answered at Waterford Street. As we have said, it is agreed that the distance from the middle of the cross walk here in question to the middle of Waterford Street is thirty-five feet. After a colloquy between counsel and the judge,* the judge asked the witness if he understood the question, and he said, "As I understood the question, — [it was] where was the car at the time that McFeeley [the intestate] was crossing between the third rail from the sidewalk that he left to the last rail nearest to the left-hand side where I was — where was he when he struck that track?" The examination then proceeded as follows: "Q. No, where was the car just before McFeeley started to cross the third rail from the other side of the street from where you were? A. That is, the rail nearest to his side? Q. Yes. A. At Garland Street." He was then asked: "Q. . . . When McFeeley started to cross the last track; that means he had already crossed from the right-hand side of Washington toward Decatur—had crossed the first track and come to the second track, which was the nearest track to you. A. Yes, sir. Q. At the time when he started to cross that track where was the car with reference to any object or street or place? A. Well, the car at that time was about half way between Garland and where he was struck — Decatur Street." On the next day the plaintiff recalled the witness and asked him a question "as to the position of the car when McFeeley was between the outbound and the inbound tracks." The judge ruled that this question had been answered and that the question must be excluded unless the witness said that there was a mistake which he wished to correct. Thereupon the witness said that he had misunderstood the question; that when he said that the car was at Garland Street he meant the car was at Garland Street when the intestate started to cross the outbound tracks, and that the car was at Waterford Street when he started to cross the inbound tracks.

Washington Street at the point in question is thirty-five feet from curb to curb. From the westerly curb to the nearer rail of the outbound track is eleven feet. Each track is four feet eight and one half inches wide, and the space between the outbound

---

* *Sanderson, J.*

and inbound tracks is five feet wide. It follows that, allowing two feet for the overhang of the car, the intestate had a little more than twenty-seven feet to go from the westerly curb to a place of safety beyond the inbound track.

It was for the jury to decide on these contradictory statements what the facts in the case were. On that point, *Tierney* v. *Boston Elevated Railway*, 216 Mass. 283, is decisive.

The jury could have found that the intestate looked when he was five to six feet from the curb of the westerly sidewalk (that is to say, when he had twenty-one feet to go to get to a place of safety), and that the car was then about one hundred and seventy-five feet away, that is to say, some distance above Garland Street. That after going some fifteen feet (to the nearer rail of the inbound track) and when he had seven feet more to go to get to a place of safety he looked again and the car was distant from thirty-five feet (Waterford Street) to ninety feet (half way between Garland and Waterford Streets). That he kept on and was struck on the farther rail of the inbound track when he was within two feet of safety. Finally, that in the words of the eyewitness, "he did not realize that the car was coming as fast as it was, and he did not realize it until he got between the third and fourth rail, and the minute that he realized it he darted forward, and as he darted forward he was struck by that car." On the question of the due care of the intestate also, *Tierney* v. *Boston Elevated Railway, ubi supra,* is decisive.

*Exceptions overruled.*

*F. M. Ives,* for the defendant.

*J. H. Vahey, (D. J. Kane & P. Mansfield* with him,) for the plaintiff.