WESTON MANLEY *vs.* BAY STATE STREET RAILWAY COMPANY.

Plymouth.   November 16, 1914. — January 8, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Negligence,* Street railway.

At the trial of an action against a street railway company by a milk dealer who received personal injuries when a wagon in which he was travelling was struck by an electric street car operated by the defendant upon a single track railway, there was evidence that, at about half past six in the morning of a day late in October, the wagon was being driven slowly from a cross street upon which the defendant's track was for the purpose of turning to the left on that street, crossing it and entering another street on the other side, that the view from the wagon upon the defendant's tracks to the right was somewhat obstructed, that the wagon had a cover and hood over the seat where the driver and the plaintiff sat, that, when about forty-five feet from the nearest rail of the defendant's track, the driver and the plaintiff looked in both directions on the track and listened and neither saw nor heard a car, that at that point they could see thirty-five feet of the track toward their right, that without looking again they drove toward the track and turned to the left, keeping to the left side of the track because of the condition of the street, when, before the wagon had passed the corner far enough to get straightened out parallel to the sidewalk, its right forward hub was struck by a car of the defendant which had approached from their right at a speed of about thirty-five miles an hour without a gong or any warning being sounded and along a track where the motorman's view was unobstructed for several hundred feet. *Held,* that the questions, whether the plaintiff was in the exercise of due care and whether the motorman was negligent, were for the jury.

At a trial of an action against a street railway company for personal injuries resulting from a collision between an electric street car of the defendant and a wagon in which the plaintiff was travelling, where there was conflicting evidence as to whether the plaintiff looked and listened for cars approaching upon the defendant's track, a request for a ruling, that, "To look when looking is of no avail and to listen for nothing in particular is equivalent to not looking or listening at all, and if this is all that the plaintiff's driver did, the plaintiff is not entitled to damages and your verdict must be for the defendant," properly may be refused.

If, at the trial of an action against a street railway company for personal injuries, one of the defendant's inspectors, who interviewed the plaintiff soon after he received his injuries and who had testified in direct examination by the defendant that the plaintiff at that interview had told him that he did not know who was to blame for the accident, is allowed to be asked in cross-examination, in substance, whether at the time when he took the statement from the plaintiff he knew that, in case of a subsequent trial, the statement would be used as he was using it, and answers, "I hadn't given it a thought," the defendant, on

account of the nature of the answer, cannot have been harmed by the question; and therefore an exception by the defendant to the question and answer will be overruled, irrespective of whether the question was or was not competent, which was not decided.

Tort for personal injuries alleged to have been received, as stated in the opinion, when a milk wagon in which the plaintiff was travelling was struck at about half past six o'clock on the morning of October 26, 1910, by an electric street car of the defendant on Crescent Street in Brockton. Writ dated December 6, 1911.

In the Superior Court the case was tried before *Keating,* J. Material evidence is described in the opinion.

One Dillon, an inspector in the employ of the defendant, in testifying for the defendant in direct examination, stated that he had interviewed the plaintiff in the operating room of a hospital shortly after the accident and that the plaintiff had told him that he did not know who was to blame for the accident. In cross-examination after extended testimony as to friendly relations between himself and the plaintiff and the plaintiff's father, and after stating that it was one of his duties to interview persons injured on the defendant's street railway, he was asked, subject to an exception by the defendant, "You knew that that statement was to be used in case of any claim or suit, didn't you?" and answered, "I hadn't given it a thought." He also made the same reply to the following question, asked subject to the defendant's exception: "You knew that that statement would be used for the purpose for which you are now using it in case of a subsequent trial, didn't you?"

At the close of the evidence the presiding judge refused to rule as requested by the defendant that on all the evidence the plaintiff was not entitled to recover, and that there was no evidence of negligence of the defendant or of due care of the plaintiff, and also refused to give the following rulings, which are referred to in the opinion as properly refused:

"8. If due care requires that the driver of a team shall look or listen before coming into dangerous proximity to a car track, merely looking or listening in such a way that he does not notice what, if he had looked or listened carefully, he would have noticed is not sufficient.

"9. To look when looking is of no avail and to listen for nothing in particular is equivalent to not looking or listening at all, and if this is all that the plaintiff's driver did, the plaintiff is not entitled to damages and your verdict must be for the defendant."

There was a verdict for the plaintiff in the sum of $11,250; and the defendant alleged exceptions.

*Asa P. French*, (*R. Brackett* with him,) for the defendant.

*H. W. Ogden*, (*R. E. Tibbetts* with him,) for the plaintiff.

CROSBY, J. At the time of the accident the defendant was operating a single track electric street railway between Brockton and Whitman. The track was in about the centre of Crescent Street, at its intersection with Plymouth Street, in Brockton, where the accident occurred.

Crescent Street runs in an easterly and westerly direction. Plymouth Street opens into Crescent Street from the north, and Crescent Place leads off the southerly side of Crescent Street about eighty-seven feet easterly of Plymouth Street. The distance from the cross walk at the head of Plymouth Street to the nearest or northerly rail of the track is about fifteen feet.

On the morning of the accident the plaintiff, who was a milk dealer, was riding with his driver in a one-horse, covered milk wagon, the cover of which projected over the seat in the form of a hood whose side coverings extended forward at the top farther than at the bottom. The back of the wagon was covered by a curtain, in which was a window about five inches long and two and one half inches wide.

Shortly before the accident the plaintiff had delivered milk at a house on Plymouth Street. The next delivery was to have been made on Crescent Place. After the last delivery the team passed down Plymouth Street in the direction of Crescent Street, the horse being driven by the plaintiff's driver, one Martin. Both the plaintiff and Martin testified that when they arrived at a point about twenty feet northerly of the cross walk on Crescent Street they looked to the west and to the east for electric cars, and also listened, but that neither of them saw or heard a car. The evidence showed that their view to the west was partially obstructed by a building which stood on the northwesterly corner of Crescent Street.

There was evidence that, from the place where the plaintiff and

Martin testified that they looked toward the west, Crescent Street could be seen for a distance of about thirty-five feet, although the plaintiff testified, on cross-examination, that they looked when about opposite the pole on Plymouth Street. If so, it could have been found that they could have seen Crescent Street at that point to the west for a distance of approximately one hundred feet.

There was evidence that the horse was travelling at the rate of five or six miles an hour as they drove into Crescent Street, and that on account of the bad condition of the road on the southerly side they turned to the east and were proceeding on the northerly or left side of Crescent Street, when the hub of the front wheel on the right side of the wagon was struck by the car and the plaintiff was thrown out and injured, either by a kick from the horse or by reason of the wagon running over him.

From the evidence it appeared that when the collision occurred the horse had turned the corner and was facing toward the east, but that the wagon had not passed the corner far enough to become "straightened out" parallel with the sidewalk. There was also evidence that the part of the car that came into collision with the team was at the first window back of the vestibule.

The evidence was conflicting as to the speed of the car, as well as upon the question whether the gong was sounded or other warning was given by the motorman as the car approached the place of the accident. The plaintiff and his driver testified that they did not hear any gong or know of the presence of the car up to the time of the accident. A witness called by the plaintiff testified that no gong was sounded, and that the car was moving at the rate of thirty or thirty-five miles an hour. There was other evidence to show that it was moving at the rate of five or six miles an hour, and that the gong was sounded.

The defendant contends that upon all the evidence a verdict should have been directed for the defendant. It is apparent that the view of Crescent Street to the west was considerably obstructed by the building on the corner, at the place where the plaintiff and his driver testified that they looked for a car, namely, on Plymouth Street, twenty feet northerly of the cross walk. While they did not look again in the direction from which the car came, it is to be noted that the point from which they testified that they looked

was at a distance of about forty-five feet from the northerly rail of the track.

We think that this evidence required the question of the plaintiff's due care to be left to the jury.

It is to be observed that the driver of the team was not attempting to cross the tracks, but had turned into Crescent Street and was proceeding along the left side of the street at the time of the collision. It could not have been ruled as matter of law that the plaintiff was negligent in allowing his team to be driven so near the track as to be struck by the car. *Logan* v. *Old Colony Street Railway,* 190 Mass. 115. *Vincent* v. *Norton & Taunton Street Railway,* 180 Mass. 104. It could have been found that as the plaintiff's team approached the cross walk at Crescent Street it slackened its speed and was driven slowly; and that the plaintiff and Martin, before coming out of Plymouth Street, looked in both directions for a car and listened until the time the team was struck. This evidence, if believed, warranted the jury in finding that the plaintiff used his senses actively for his protection.

It could not have been ruled as matter of law that the plaintiff was not exercising due care because he did not look a second time in travelling a distance of less than forty-five feet to the place where the collision occurred; nor could it be ruled as matter of law that the plaintiff was lacking in due care because the team was not stopped, before it was driven out on to Crescent Street, to ascertain whether a car was approaching. *Carrahar* v. *Boston & Northern Street Railway,* 198 Mass. 549, 552. *Jeddrey* v. *Boston & Northern Street Railway,* 198 Mass. 232.

There was an unobstructed view of Crescent Street, at the place of the accident, from the west for a distance of several hundred feet. If the jury believed the evidence that the car was running at a speed of thirty-five miles an hour as it came to Plymouth Street, without any gong being sounded or other warning given of its approach, it was plainly for the jury to determine whether the defendant was negligent. *Orth* v. *Boston Elevated Railway,* 188 Mass. 427. *Kane* v. *Boston Elevated Railway,* 218 Mass. 101.

In some of the cases relied on by the defendant the plaintiffs were injured at the intersection of streets while travelling on foot, *Hall* v. *West End Street Railway,* 168 Mass. 461; *Itzkowitz* v.

*Boston Elevated Railway,* 186 Mass. 142; *Willis* v. *Boston & Northern Street Railway,* 202 Mass. 463; *Brightman* v. *Union Street Railway,* 216 Mass. 152; *Plympton* v. *Boston Elevated Railway,* 217 Mass. 137. These cases are to be distinguished from this case. *Smith* v. *Holyoke Street Railway,* 210 Mass. 202, and cases cited.

In *Ferguson* v. *Old Colony Street Railway,* 204 Mass. 340, much relied on by the defendant, the evidence showed that the plaintiff attempted to drive over a crossing which he knew to be dangerous without looking or listening or taking any precautions for his safety. That case is clearly distinguishable from the case at bar.

The exception to the refusal of the judge to give the eighth ruling requested by the defendant cannot be sustained, as it was covered in substance by the judge's charge upon the question of the plaintiff's due care.

The ninth request could not have been given in the form presented.

The exceptions to the admission of the two questions put to the witness Dillon, an inspector of the defendant company, must be overruled; if we assume that the questions were incompetent, the answers show that the defendant was not prejudiced. St. 1913, c. 716. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15.

*Exceptions overruled.*