**GREAT AMERICAN INDEMNITY COMPANY, Appellant,**

v.

**Mrs. Palmira HOLLOWAY, Appellee.**

**No. 18301.**

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1960.

Robert J. Vandaworker, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for Great American Indemnity Co., defendant-appellant.

Charles H. Dameron, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for Mrs. Palmira Holloway, plaintiff-appellee.

Before RIVES, CAMERON and JONES, Circuit Judges.

RIVES, Circuit Judge.

The district court directed a verdict for the plaintiff, and appellant does not protest that ruling. The contentions on appeal are that the district court's charge leaving the issue of permanent injuries open to the jury was erroneous, and that the court abused its discretion in not granting a new trial for excessive damages. The jury's verdict in favor of the plaintiff awarded damages in the sum of $10,000.00.

The collision occurred on January 16, 1958. Plaintiff was thrown against the top of the car, causing painful injuries and resulting in a stormy course of pregnancy. Three days of hospitalization were required, following which she was confined to her bed for two weeks. She complained of headache, back pain and sporadic episodes of uterine cramps for approximately four months, and then, on May 23, 1958, gave birth to a normal child. Her physician had advised her that she might lose the baby because of the severe contusion that she had, and testified that, "I know that she was very apprehensive about losing the baby." The plaintiff testified to crying, hysteria, and extreme mental distress about the danger of losing her baby.

Six weeks after the birth of the child, she returned to her physician and at that time was discharged. She did not again seek medical advice until September 9, 1959, when she consulted an orthopedic surgeon, complaining of "pain in upper and lower back, headaches and nervousness." The surgeon found that her symptoms were largely due to tension, and that she was suffering from an arthritic condition which would not be caused by, but could be aggravated by trauma. Neither of the physicians testified that she had received any permanent injuries in the accident.

The trial was held one year and ten months after the accident. The plaintiff's husband testified that: "She complains a lot about her back and head and nervous spells. She is very nervous and I just hate to ride in a car with her. She can't hardly ride in a car no more * * *. There has been a lot of change in her personality. Well, she gets real nervous now. She used to not be that way * * *. She complains a lot and she is always telling me how her back and head are giving her a lot of trouble and then how nervous she is, she says she just, every once and a while gets completely—just well, I can't explain it, just I guess disgusted, if that's the word for it, I don't know and she has been that way since the accident happened." The plaintiff testified that she put off going to a doctor following the delivery of her baby, and, further:

"* * * I thought that my back and my neck and my head would get alright (sic) and I just didn't have the money to leave the kids at a nursery and I just kept thinking that I would be all right.

"Q. Well, now do you have any complaints at the present time, any physical complaints? A. Well, my neck and my head still bother me a lot when I mop and when I do my housework it bothers me a lot.

"Q. You say your head bothers you, what part of your head bothers you? A. Right behind near my

head and my neck, all the way down to the lower part of my back.

"Q. Is it what type—could you describe the pains you have? A. Well, they are just very hard pains.

"Q. Do you have it all the time, is it frequently, or infrequently? A. When I lift something heavy or when I do too much, that's when it really bothers me.

"Q. That is when it bothers you? A. Uh-Huh."

The defendant objected to the following part of the court's charge:

"* * * Now in estimating damages to be awarded you may take into consideration the bodily injury suffered, the permanent or temporary character of such injury, the physical and mental pain and suffering to which plaintiff has been and or may hereafter be subjected by reason of such injury, the extent and handicap of disability that you find as the out growth (sic) of the injury received in the accident."

Following the defendant's objection, the court further charged the jury:

"* * * Now, I mentioned to you that you could take into consideration the permanent or temporary character of the injury. Now I suggest to you that you scrutinize this testimony carefully to see whether there is any evidence at all to the effect that the condition this lady had or has is of a permanent character. Now disability is permanent when it is of such a nature that it is reasonably certain it will continue throughout a person's life time (sic). Let the jury be retired."

The defendant again objected.

The appellant in brief quotes from Franklin v. Shelton, 10 Cir., 1957, 250 F.2d 92, 97:

"It is uniformly held that where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts * * *."

The Supreme Court, in a later opinion, has expressed the rule differently:

"The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause. Neither can it be impaired by the lack of medical unanimity as to the respective likelihood of the potential causes of the aggravation, or by the fact that other potential causes of the aggravation existed and were not conclusively negated by the proofs. The matter does not turn on the use of a particular form of words by the physicians in giving their testimony. The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation. They were entitled to take all the circumstances, including the medical testimony, into consideration. See Sullivan v. Boston Elevated R. Co., 185 Mass. 602, 71 N.E. 90; Miami Coal Co. v. Luce, 76 Ind.App. 245, 131 N.E. 824. Though this case involves a medical issue, it is no exception to the admonition that, 'It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury * * * *. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * * Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because

judges feel that other results are more reasonable.' Tennant v. Peoria & Pekin Union R. Co., 321 U.S. 29, 35, [64 S.Ct. 409, 88 L.Ed. 520.] The proofs here justified with reason the conclusion of the jury that the accident caused the petitioner's serious subsequent illness. See Rogers v. Missouri Pacific R. Co., 352 U.S. 500 [77 S.Ct. 443, 1 L.Ed.2d 493]." Sentilles v. Inter-Caribbean Corp., 1959, 361 U.S. 107, 109–110, 80 S.Ct. 173, 175, 4 L.Ed.2d 142.

■■  There was, we think, ample evidence to require the submission to the jury of the issue of permanency *vel non* of the plaintiff's injuries. See Southern Farm Bureau Casualty Co. v. Palmer, 5 Cir., 1959, 263 F.2d 206, 209; A. H. Bull Steamship Co., Inc. v. Ligon, 5 Cir., 285 F.2d 936. We find no abuse of discretion in the denial of defendant's motion for new trial. See Whiteman v. Pitrie, 5 Cir., 1955, 220 F.2d 914, 919. The judgment is

Affirmed.