122 So.2d 22 (1960)
HECTOR SUPPLY CO., a Florida corporation, Appellant,
v.
Harry Edward CARTER, Appellee.
No. 59-172.
District Court of Appeal of Florida. Third District.
July 11, 1960.
Rehearing Denied July 25, 1960.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell and Earl Faircloth, Miami, for appellant.
Nichols, Gaither, Green, Frates & Beckham and Sam Daniels, Miami, for appellee.
PEARSON, Judge.
The defendant in a personal injury action appeals from a final judgment entered pursuant to a jury verdict. The plaintiff, Harry Carter, was an employee of the Dade County School System. The defendant, Hector Supply Company, was a retailer in agricultural machinery and supplies. We hold that the evidence viewed in the light most favorable to the plaintiff did not afford a basis for liability and we reverse.
*23 The essential facts are not in dispute. The question is whether the facts at bar are sufficient to have the jury pass on the question of liability. Carter claims liability under an implied warranty of fitness of a certain machine sold by the supply company to the Dade County School Board. After an extended use of the machine over a period of some six months, the plaintiff was injured when the machine broke because of a poor or faulty design of the machine itself.
The supply company and the school board had been doing business upon a bid basis for several years. The school board was in need of several pieces of machinery to be used in the care of school grounds and circulated to the suppliers an invitation to bid upon these machines. One of these machines was a "sulky" attachment for lawn mowers. The board specified that the supplier must furnish "riding sulkies, bucket type seats, pneumatic tires." The supplier responded to this request to bid by an offer to sell "Four, King O'Lawn Riding Sulky, bucket type seat, pneumatic tires," at a unit price of $58. This offer to sell was accepted and a formal contract prepared by the board for the purchase of the sulkies by the brand name. Prior to the execution of the written contract of purchase the sulkies were delivered to the school board warehouse and were there uncrated and assembled by board employees. After using them for several months, Carter was injured when the frame of one of the sulkies broke while being used.
His complaint claimed a breach of an implied warranty of fitness for the use for which the sulky was sold and at trial he produced as a witness, an expert metallurgist, who testified that all King O'Lawn Sulkies were defective because they were not properly designed and would break under continued use by reason of metal fatigue.
The supply company urged at several stages in the proceeding, that there was no implied warranty under the sale. The appellant has filed 38 assignments of error. Of these 38 assignments of error, two are directed to the ruling of the court that the complaint stated a cause of action; eight are directed to the refusal of the court to direct a verdict at various stages of the trial; six are directed to rulings upon testimony, and twenty-two of the assignments are directed to the court's charges. Inasmuch as appellant does not urge 38 separate errors, the number filed was excessive and has hindered rather than aided the prompt disposition of the appeal.
Under these assignments the appellant has presented two points, each urging that there can be no implied warranty under the facts. The first point presents the question of whether there can be an implied warranty of an article sold, where the vendee has an opportunity to inspect the article, and the vendor is not guilty of fraud and is not the manufacturer of the article sold. The second point presents the question whether there can be an implied warranty in the absence of any privity of contract between the seller and the ultimate user.
The appellant has taken the position that the two questions are "preserved for appellate review by all of the assignments of error." Such a practice violates Rule 3.7, subd. f(4), Florida Appellate Rules, 3 F.S. '59, 31 F.S.A. No motion was presented to this court to require the appellant to file a brief in conformity with the rules or suffer a dismissal of its appeal. The appellee chose to wait until the filing of his brief and therein argued that the appeal should be affirmed because of the violation of the rule. Such an objection is untimely.
Also we are not in this case called upon to discuss an employee's right to work with tools which are reasonably safe for the purposes for which they have been furnished to him. For a like reason we do not discuss the liability of one who places upon the market manufactured articles he knew or should have known to be dangerous to members of the public. Although the court here deals with a personal injury *24 to an individual (the employee), his claim does not sound in tort for the violation of a personal right but seeks to enforce a right based upon dealings between his employer and another and derived from the former.
The second point, which we will answer first, is not well taken in view of this court's holding in Continental Copper & Steel Indus., Inc. v. E.C. "Red" Cornelius, Inc., Fla.App. 1958, 104 So.2d 40, wherein a manufacturer of electric cable was held liable upon an implied warranty although the cable was sold through an independent supplier. Although the defendant was the manufacturer, the specific question decided was whether privity of contract is a necessary prerequisite for recovery upon an implied warranty. See also Matthews v. Lawnlite Company, Fla. 1956, 88 So.2d 299, and other cases cited in the Continental Copper opinion.
The remaining point is based upon the contention that the law does not imply a warranty under the circumstances of the instant sale. It is pointed out that: (1) the defendant was not the manufacturer; (2) the machine was purchased from the supplier by trade name; (3) the buyer (the school board) had opportunity for inspection and rejection equal to that of the supplier. It may also be observed that the record does not reveal that the supplier had any greater opportunity to discover the defect than the buyer. Since the defect was one of design, it does not appear that it was discoverable upon inspection by either. It was only through the inspection of an expert metallurgist after the accident, that the defect was discovered.
In Lambert v. Sistrunk, Fla. 1952, 58 So.2d 434, the Supreme Court held that there was no implied warranty where the supplier of a ladder (which broke causing injury) was not the manufacturer and the vendee had an opportunity to inspect the article. In the absence of proof that the supplier knew or should have known that the article he offered to sell contained the defect in design, the supplier, who is not the manufacturer, cannot be held to have impliedly warranted that the article was free of such defect.
Reversed.
HORTON, C.J., and CARROLL, CHAS., J., concur.