128 So.2d 393 (1961)
Eula Mae JARVIS, Petitioner,
v.
MIAMI RETREAT FOUNDATION, Respondent.
No. 30799.
Supreme Court of Florida.
March 22, 1961.
Rehearing Denied April 19, 1961.
*394 Danton V. Ferrero, Miami, for petitioner.
Edwin H. Underwood, Jr., and Andrew L. Richard of Wakefield & Underwood, Miami, Paul E. Speh and Burnis T. Coleman, Tallahassee, for respondent.
O'CONNELL, Justice.
Petitioner, Eula Mae Jarvis, while employed by respondent as a cook, on September 17, 1954 bumped into an open oven door bruising and burning her right leg. In the course of treatment for the burn it was found that petitioner had a preexisting latent diabetic condition with related vascular and nervous condition. The burned area became infected, which infection spread to the foot. Various complications required that the right foot be amputated, which was done in February 1958.
Compensation was paid and medical treatment was furnished to petitioner. In addition she was fitted with a prosthesis, or artificial foot.
Subsequently, in July 1958 or shortly thereafter, petitioner's left foot became infected and diseased with many, if not all, of the same complications which required amputation of the right foot. The medical testimony indicates that it is possible that part or all of the left foot may have to be amputated at some future date.
The respondent and its carrier voluntarily rated the petitioner's injury as 100% of the right foot and commenced paying permanent disability compensation on that basis, but they have denied, and do deny, that the condition of the left foot is attributable to the compensable accident of September 17, 1954 and therefore have refused compensation therefor.
The petitioner before the deputy contended, and here contends, that she should be awarded permanent total disability of the body as a whole based on loss of earning capacity, rather than 100% disability of the right foot alone and further contends that the diseased condition of her left foot is attributable to the initial compensable accident under the second or successive accident theory.
The deputy ruled that the petitioner was entitled only to compensation for 100% disability of the right foot.
*395 The evidence clearly shows that the disability suffered by the petitioner is due to removal of her right foot and a diseased condition of her left foot which may have to be removed. The diabetes and related conditions of the vascular and nervous systems are not disabling.
Loss of a foot is a scheduled injury under Sec. 440.15(3), F.S.A., and the determination of compensation therefor has been made by the legislature and is not to be based upon loss of wage earning capacity, as is the case in non-scheduled injuries.
Therefore, as we view the record and the statute, the deputy was correct in his finding that the petitioner was not permanently totally disabled because of loss of wage earning capacity as contended by petitioner and this would be true, insofar as permanent disability is concerned, even if it should be determined that the condition of the left foot is compensable.
The correctness of that part of the deputy's order which held the condition of the left foot not to be compensable is more difficult of decision.
Petitioner was originally treated for the bruise and burn to her right leg and the resulting condition of her right foot by a Dr. Ramey who did not testify in this cause. She was also treated by and had her foot removed by a Dr. Molina. Prior to the principal hearing in this cause she was examined by Doctors Neal, Salley and Mangels by direction of the deputy. At her own instance petitioner was also examined by Dr. Burtner about two weeks prior to the hearing. A Dr. Kucku also treated petitioner for her diabetes.
Doctors Molina, Neal and Mangels testified before the deputy as did Dr. Burtner. Dr. Salley's testimony was submitted by deposition.
We are concerned with the testimony of these physicians here only as it relates to the causal connection between the compensable injury to the right foot and the subsequent condition of the left foot.
Before considering the testimony of these physicians it will be helpful to summarize the petitioner's testimony relating to the cause of the infection to her left foot.
The petitioner testified as follows:
"I started out the door and I couldn't * * * I stepped out on this foot, this thing (indicating), and it turned. It kind of turned and offbalanced me and threw me and, of course, I caught with my other foot before I hit the ground, and then my shoe twisted off my foot and I just pulled it back up. It hurt my foot, but I just pulled the shoe back up when I got myself straightened up, and later on I discovered my foot felt wet or something, and I took my shoe off and it was full of blood.
"I pulled off my hose, and the toenail on the big toe was loosened and the one next to the little toe was pulled plumb loose."
She testified that she contacted the carrier's office and was advised to see Dr. Ramey; she did so and he examined her foot and removed the nails; Dr. Ramey continued to treat her but the foot got worse; and that he finally sent her to Jackson Memorial Hospital. The evidence shows that she entered the hospital in December 1958 and was discharged in January 1959.
Doctors Molina, Neal, Salley and Mangels all testified that they could not connect or attribute the condition of the left foot to the bruise and burn of the right leg and subsequent infection and removal of the right foot. In response to a hypothetical question which assumed that petitioner had injured her left foot in the manner in which she testified these doctors generally agreed that such trauma could lead to the diseased condition of the foot. Whether or not petitioner injured her foot *396 in the manner related by her is therefore the decisive question of fact in this cause.
Each of the doctors mentioned in the preceding paragraph testified that the petitioner gave them no history of injuring her left foot in the manner she testified. Further, Dr. Mangels testified that not only did she not relate such history but also "she repeatedly stated that there was no known antecedent injury or trauma incurred by the left leg." Dr. Mangels examined petitioner on October 20, 1958 some three months after petitioner allegedly injured her left foot.
In her testimony petitioner testified that she told Dr. Salley and Dr. Mangels of the July injury to her left foot but did not tell Doctors Molina or Neal about it.
Dr. Burtner who examined petitioner some two weeks before the hearing, not for treatment but for the purpose of qualifying himself as a witness in her behalf, testified that petitioner did relate to him the history of the injury to the left foot in July 1958.
The only other evidence on the injury to the left foot was a "Discharge Summary", one of the records on the petitioner kept by Jackson Memorial Hospital. It shows that she was admitted on 12/10/58 and discharged 1/29/59. This was the admission directed by Dr. Ramey for the condition of the left foot.
In this document under "Pertinent History and Positive Physical Findings" appears this entry:
"This 57 year old white female, diabetic, dates the onset of her present difficulty to July, 1958, at which time she scrubbed the big toe of the left foot, to the extent that the nail had to be removed. She denies injury to the 4th toe at that time, or at any time subsequently. About two weeks [after] the great toe injury, the 4th toe of the left foot became tender and subsequently began to drain from under the nail so that the nail fell off. She went to a private physician. * *"
On cross examination petitioner was asked whether, on admittance to the hospital, she had told of her falling and injury to her left foot. She stated that she did not remember what she had said. Then asked if she had told them that she had scrubbed the big toe so hard that the nail had to be removed she stated that she did not say that.
On this question of the initial cause of the condition of the left foot we then find the positive testimony of petitioner that she injured her left foot due to a stumbling, related to the turning of the prosthetic device on her right foot, and the testimony of Dr. Burtner who stated that petitioner related such history to him.
On the other side is the negative testimony of three physicians, one of whom was a treating physician, who stated that she gave them no history of such an accident; the positive testimony of Dr. Mangels, who stated that the petitioner repeatedly denied any injury to the left foot; and the hospital record above quoted.
Petitioner, however, says that the hospital record should not have been admitted because it is hearsay evidence.
Respondent argues that the record was admissible, citing in support of its contention the cases of Florida Power & Light Co. v. Bridgeman, 1938, 133 Fla. 195, 182 So. 911; Mutual Life Ins. Co. of New York v. Knight, 1938, 130 Fla. 733, 178 So. 898; and Smith v. Mott, Fla. 1958, 100 So.2d 173. The question also arises as to the applicability of Sec. 382.31, F.S.A.
It cannot be denied that the record in question is one required to be kept by law. The record was properly identified by the Medical Records Librarian of the hospital who also identified Dr. C.L. Wilson, the person who signed the "Discharge Summary", as an orthopedic resident at the hospital.
*397 It is true that Sec. 382.31, supra, requires that the "superintendents or managers, or other persons in charge of hospitals" make such record. In this instance the person signing the subject portion of the record was not such a person. However, despite the ruling of this Court in Florida Power & Light Co. v. Bridgeman, supra, as to the identification required as a prerequisite to admission, which case we find to be factually distinguishable, we do not understand that such a record may not be properly made and signed by an identified person other than the manager, superintendent, or other person in charge of the institution. It is obvious that the managerial personnel of modern hospitals usually do not participate in medical treatment and therefore do not and probably could not make or supervise the entry of notes of medical diagnosis and treatment or of the history taken in connection therewith.
The reasonable construction of the statute is that the managerial staff shall cause such records to be made and kept by those persons who are in charge of performing the services offered by the hospital and possess knowledge of the matters to be written into the record.
This does not mean, however, that statements in such a record which are unrelated to diagnosis and treatment of the patient should be given status of admissible evidence. In this case, however, the manner in which the foot became infected or the cause leading to the infection would seem to be necessary information to be considered in diagnosis of the condition.
Under the less technical and formal proceedings used in workmen's compensation cases we think the hospital record was admissible. However, even if it were not properly admitted we think that the positive testimony of Dr. Mangels above mentioned would be sufficient to constitute substantial competent evidence that the accident to the left foot was not as testified by the petitioner, but was the result of her diabetic and related conditions.
Therefore, as we review the record which the deputy had before him it contains competent substantial evidence that the petitioner did not sustain a second or successive injury to her left foot and that the condition of that foot is not causally related to the first compensable accident. The medical testimony of all physicians, except Dr. Burtner, is that absent an accident or trauma to the left foot there was no causal relation between the condition of the left foot and the first compensable accident. Therefore, when the deputy elected not to believe the petitioner's testimony as to the injury to the left foot, but to believe that, as stated by Dr. Mangels, she had repeatedly denied any injury thereto, it follows that there was competent substantial evidence to support his finding that there was no causal connection between the accident to the right leg and the condition of the left foot.
Petitioner also complains that the deputy made his decision in this cause eight months after the testimony was taken and without reference to the transcript of the testimony.
Quite obviously rendering a decision after such a long delay without review of the written testimony in a case such as this would tax the memory of the most brilliant mind. If true the allegation is a serious one. Such a procedure does not create respect for or confidence in a decision rendered thereunder.
However, it is presumed that the deputy did render his order on the facts reflected in the transcript. His order specifically states that he did so. We have reviewed the record and found it sufficient to sustain the order. In view of this we find no merit to the petitioner's contention on this point
For the reasons above expressed the petition for certiorari is denied.
THOMAS, C.J., TERRELL and ROBERTS, JJ., and WIGGINTON, District Court Judge, concur.